**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| WSOU Investments, LLC d/b/a Brazos Licensing and Development, <br><br> Plaintiff, <br><br> v. <br><br> Hewlett Packard Enterprise Company, <br><br> Defendant. | Nos.  6:20-cv-00729-ADA <br>  6:20-cv-00730-ADA <br>  6:20-cv-00783-ADA <br><br> **JURY TRIAL DEMANDED** |

**BRAZOS'S REPLY CLAIM CONSTRUCTION BRIEF REGARDING**
**U.S. PATENT NOS. 7,646,729; 8,462,774; AND 9,398,629**

<u>TABLE OF CONTENTS</u>

I.      U.S. Patent No. 7,646,729 (Case No. 6:20-cv-00729-ADA) ................................ 1

   A.      "a sniffer" (claims 1, 13) ................................................................................ 1

   B.      "link [status / state] messages" (claims 1, 7, 13, 19) .................................... 2

   C.      "nodal area[s]" (claims 1, 13) ........................................................................ 5

       1.      "inner nodal area" ..................................................................................... 6

       2.      "outer nodal area[s]" ................................................................................. 8

   D.      "configuring the sniffer as a partition designated inner nodal-area node . . ."
           (claims 1, 13) ................................................................................................. 9

II.     U.S. Patent No. 8,462,774 (Case No. 6:20-cv-00730-ADA) .............................. 11

   A.      "assigning the MC-LAG to a multi-chassis link aggregate group virtual local
           area network (MC-LAG VLAN)" (claim 12) ............................................... 11

III.    U.S. Patent No. 9,398,629 (Case No. 6:20-cv-00783-ADA) .............................. 12

   A.      "seed WLAN controller" (claims 1, 8) ......................................................... 12

   B.      "a processing module . . ." (claim 1) ............................................................ 12

   C.      "receiv[e / ing] information for other WLAN controllers in the mobility
           domain" (claims 1, 8) ................................................................................... 14

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innovative Props. Co. v. Avery Dennison Corp.*,
   350 F.3d 1365 (Fed. Cir. 2003).......................................................................2

*Agume Techs., Inc. v. Yahoo! Inc.*,
   755 F.3d 1326 (Fed. Cir. 2014).......................................................................5

*Baran v. Med. Device Techs., Inc.*,
   616 F.3d 1309 (Fed. Cir. 2010).......................................................................2

*Bid for Position, LLC v. AOL, LLC*,
   601 F.3d 1311 (Fed. Cir. 2010).......................................................................3

*CloudofChange, LLC v. NCR Corp.*,
   No. 6:19-cv-513, 2020 WL 4004810 (W.D. Tex. July 15, 2020)...................7

*Forest Labs., LLC v. SigmaPharm Labs., LLC*,
   918 F.3d 928 (Fed. Cir. 2019).........................................................................7

*KCJ Corp. v. Kinetic Concepts, Inc.*,
   223 F.3d 1351 (Fed. Cir. 2000).......................................................................9

*Lecat's Ventriloscope v. MT Tool & Mfg.*,
   351 F. Supp. 3d 1100 (N.D. Ill. 2018) ...........................................................4

*M2M Sols., LLC v. Sierra Wireless Am., Inc.*,
   No. 1:14-cv-1102, 2019 WL 6328119 (D. Del. Nov. 26, 2019)...............13, 14

*Meetrix IP, LLC v. Citrix Sys., Inc.*,
   No. 1:16-cv-1033, 2017 WL 5986191 (W.D. Tex. Dec. 1, 2017)...............5

*Northrop Grumman Corp. v. Intel Corp.*,
   325 F.3d 1346 (Fed. Cir. 2003).......................................................................9

*Nystrom v. TREX Co.*,
   424 F.3d 1136 (Fed. Cir. 2005).......................................................................2

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc)................................................ *passim*

*Rexnord Corp. v. Laitram Corp.*,
   274 F.3d 1336 (Fed. Cir. 2001).....................................................................15

*Smith & Nephew, Inc. v. Ethicon, Inc.*,
   276 F.3d 1304 (Fed. Cir. 2001).......................................................................8

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
   844 F.3d 1370 (Fed. Cir. 2017).......................................................................4

*Stiftung v. Renishaw PLC*,
   945 F.2d 1173 (Fed. Cir. 1991).......................................................................8

*Techtronic Indus. Co. v. Int'l Trade Comm'n*,
    944 F.3d 901 (Fed. Cir. 2019) ..................................................................................7

*Thorner v. Sony Comput. Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ......................................................................... *passim*

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007) ..............................................................................7

*Whirlpool Corp. v. Ozcan*,
    No. 2:15-cv-2103, 2016 WL 7474517 (E.D. Tex. Dec. 29, 2016) ...........................................4

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015) (en banc) ...............................................................12

### <u>TABLE OF EXHIBITS</u>

**Ex.      Description**

**Included with Opening Brief**

1        excerpts from file history for U.S. Patent No. 7,646,729 (U.S. Pat. App. No. 10/870,217)

2        *Sniffing (network wiretap, sniffer) FAQ*, www. robertgraham.com/pubs/sniffing-faq.html (Version 0.3.3, Sept. 14, 2000), available at https://web.archive.org/web/ 20001109025400/www.robertgraham.com/pubs/sniffing-faq.html

3        excerpts from HPE's January 11, 2021 Preliminary Invalidity Contentions for the '729 Patent

4        HPE's February 19, 2021 Disclosure of Extrinsic Evidence for the '729 Patent

5        excerpts from ISO/IEC 10589:2002

6        excerpts from file history for U.S. Patent No. 9,398,629 (U.S. Pat. App. No. 14/303,637)

**Included with Reply Brief**

7        "Status," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/ dictionary/status (last accessed April 7, 2021)

I.      U.S. PATENT NO. 7,646,729 (CASE NO. 6:20-CV-00729-ADA)

   A.      "a sniffer" (claims 1, 13)

HPE admits that its "connected to a central location of the network" limitation is not derived from lexicography or disclaimer, but rather from exemplary embodiments in the specification.  Resp.[1] at 6–7.  It is, however, a cardinal sin of patent law (one that HPE commits repeatedly) to limit claims in this manner.[2]  Contrary to HPE, the specification does not always describe the sniffer as central, Resp. at 6, but expressly states that "[i]n other embodiments, the sniffer may be located in a non-central location," '729 patent at 6:9–10, and provides specific details regarding how such a non-central sniffer could be used consistent with the invention.[3]

HPE is also incorrect that this "connected to a central location of the network" limitation is required because the claims "each require the sniffer to be configured as 'a partition designated inner nodal-area node."  Resp. at 7.  As discussed for the "inner nodal area" limitation below, the claims do not require the "inner nodal area" to be "central."[4]  And even if the inner nodal area were central, the claims only require the sniffer to be "configure[ed] . . . as a partition

---

[1] Brazos cites to its Opening Claim Construction Brief as "Op." and HPE's Responsive Markman Brief as "Resp."

[2] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) ("we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment").

[3] The '729 patent describes that, "[f]or example, where an existing network includes a sniffing device and that network is connected to other networks, the sniffing device associated with the existing network may be used to retrieve information from the newly connected networks to help establish thereby the topology of the resulting network." *Id.* at 6:10–16.  The patent thus describes how the sniffer would be non-central in this expanded network (*i.e.*, "the resulting network") and could be used in it.

[4] HPE's argument on this point is circular.  HPE argues that the sniffer must be centrally connected because it is connected to an inner nodal area, Resp. at 7, and that the inner nodal area must be central because the sniffer is connected to it, *id.* at 12.  As the claims do not require the sniffer to be "connected to a central limitation" or the inner nodal area to be "central," neither of these limitations requires the other to be central.

designated inner-nodal-area node" as part of certain steps of the claimed invention. They do not impose any requirement regarding how the sniffer may be configured at other times.

HPE argues that the rest of its proposed limitations are based on disavowal from distinguishing prior art during prosecution. Resp. at 3. But where, like here, "remarks made to distinguish claims from the prior art are broader than necessary to distinguish the prior art, the full breadth of the remark is not a clear and unambiguous disavowal of claim scope."[5] As Brazos explained, *see* Op. at 4–6, and HPE declined to address, the applicants did not, in fact, distinguish the prior art based on each of the grounds asserted by HPE as limitations. Indeed, none of the statements quoted by HPE in its brief even mention any prior art, and HPE does not attempt to explain how the applicants distinguished the prior art from the claimed invention based on them. The actual arguments that the applicants made to distinguish the prior art from the claimed inventions, such as that how the specific network nodes of the Kao reference could not be sniffers, *see* Op. at 5, were narrower. Accordingly, these statements do not clearly disavow the claim scope that HPE now seeks to exclude.

## B.   "link [status / state] messages" (claims 1, 7, 13, 19)

HPE's argument that these terms are indefinite because the claims interchange the words "status" and "state," *see* Resp. at 8–10, is misguided.

Here, it is clear from the context of the specification and claims of the '729 patent that these terms are used in the same manner.[6] First, the words "status" (highlighted in <mark>green</mark> in the

---

[5] *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373 (Fed. Cir. 2003).

[6] *See Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010) (implication that different terms have different meanings "is overcome where . . . the evidence indicates that the patentee used the two terms interchangeably"); *Nystrom v. TREX Co.*, 424 F.3d 1136, 1143 (Fed. Cir. 2005) ("Different terms or phrases in separate claims may be construed to cover the same subject matter where the written description and prosecution history indicate that such a reading

quotations from the patent below) and "state" (highlighted in blue) have similar meanings, with a dictionary definition of "*status*" including "*state* or condition with respect to circumstances," such as "the *status* of the negotiations."  Ex. 7, "Status," Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/status (emphasis added).  Moreover, the specification alternates between these words, including within the same paragraphs and embodiments, indicating that it intends for them to be interchangeable:

> . . . All nodes in one level send *link status information* only to the nodes in that level and in that particular area.  That is, all nodes in one L1 area send **link status messages** only to the other nodes in that area.  The L2 node in an L1 area is also an L1 node for that L1 area.  L2 nodes in turn exchange **link state messages** only for the L2 area.  Thus, if one L1 node in an L1 area sends a ***message*** to another L1 node in another L1 area, the ***message*** is sent to the respective L2 node, which routes [the] ***message*** to another L2 node associated with the target L1 area.  The L2 node at the target L1 area then routes the ***message*** to the destination L1 node.

'729 patent at 3:1–11 (emphasis added).  In the paragraph reproduced above, the patent describes that "[a]ll nodes in one level send link status information only to the nodes in that level and in that particular area."  In the next two sentences, it describes the messages that convey this "link status information" as both "link status messages" and "link state messages," and then refers to either of these as "the message," indicating that no distinction is intended between them.  Similarly, the patent explicitly describes "LSPs," which it defines as "link state messages," *id.* at 3:27, as being used to "send link status information," *id.* at 3:33–35 ("All nodes in one area send link status information only to the nodes in that area, *i.e.*, all nodes in a first outer ring area 1041, send LSPs only to the other nodes in that area.").  This further indicates that no distinction in meaning was intended between the use of the word "state" and the use of the word "status."

---

. . . is proper."); *Bid for Position, LLC v. AOL, LLC*, 601 F.3d 1311, 1317–18 (Fed. Cir. 2010) ("'bid' and 'value of the bid' mean the same thing").

Even if "link status messages" and "link state messages" were intended to have different meanings (they were not), HPE has not and cannot meet its burden to overcome the presumption of definiteness by clear and convincing evidence.[7]  HPE has not asserted any argument specific to either term explaining why a person of ordinary skill in the art would not be able to understand its meaning, and it has failed to provide any evidence or case law to support its position.[8]

The meaning of these interchangeable terms is easily understandable on their own, in the context of the claims and specification of the '729 patent and with the knowledge of persons of ordinary skill in the art.  The words of the terms themselves describe that they are messages that convey the "state" or "status" of links.  The specification confirms this, describing that "send[ing] link status information," '729 patent at 3:1–3, 3:33, is done by "send[ing] link status messages," *id.* at 3:3–4, "exchang[ing] link state messages," *id.* at 3:6, and "send[ing] LSPs," *id.* at 3:35 (aka "link status messages," *id.* at 28).  Moreover, as HPE concedes "link state messages" aka "LSPs" were described in standards, such as ISO/IEC 10589, that existed at the time of the invention.  Resp. at 9; *see also* '729 patent at 3:28 (defining "link state messages" as "LSPs"), 1:67–2:1–4 (describing that "information about nodes" may be collected "based upon an existing network protocol" and that "[i]n one embodiment . . . , the existing network protocol is part of ISO-IEC 10589:2001 and the information may include ***link state messages***" (emphasis added)); Ex. 5 at 5 (defining "LSP" as "Link State Protocol Data Unit[s] aka "Link State PDU[s]").  These standards taught how such link state messages could be generated and used, *see* Ex. 5 at

---

[7] *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

[8] *See, e.g.*, *Lecat's Ventriloscope v. MT Tool & Mfg.*, 351 F. Supp. 3d 1100, 1114 (N.D. Ill. 2018) (finding a "garden-variety theory of indefiniteness 'requires a determination whether those skilled in the art would understand what is claimed'"); *Whirlpool Corp. v. Ozcan*, No. 2:15-cv-2103, 2016 WL 7474517, at *3 (E.D. Tex. Dec. 29, 2016) (finding attorney arguments without expert testimony insufficient to prove indefiniteness).

13, 75–79, 79–85, and the '729 patent describes their use in the same manner, *see generally* '729 patent at 3:1–50, 4:21–30.  Accordingly, a person of ordinary skill in the art would have understood both of these terms, and HPE has not provided any evidence to the contrary.

### C.    "nodal area[s]" (claims 1, 13)

HPE concedes that its constructions of the "nodal area[]" terms—"inner nodal area" and "outer nodal area[s]"—are not required by any lexicography or disclaimer.  *See* Resp. at 10–16. As these are the only two exceptions to the rule that a claim term should be accorded its plain and ordinary meaning, HPE's proposed constructions are improper and should be rejected.[9]

HPE argues that the "nodal area" portion of these terms should be construed as "ring of nodes" because "the specification consistently describes the inner and outer nodal areas as "ring[s]" of nodes."  Resp. at 10.  This is incorrect.  The specification repeatedly describes "areas," including an "inner nodal area" and "outer nodal area, "without describing them as "rings."  *See, e.g.*, '729 patent at 1:13–2:24, 2:60–3:11.  Moreover, each of HPE's citations of inner and outer nodal areas being discussed as "rings" relate to discussions of particular "embodiment[s]" or "examples."  *See, e.g.*, *id.* at 2:60–62 (descriptions relating to Figure 1's "depict[ion] of a network 100" are "in accordance with ***an embodiment*** of the subject invention" (emphasis added)), 4:39–42 (descriptions relating to Figure 2's "depict[ion] [of] a series of method steps 200" are "in accordance with ***a*** method of the subject invention" (emphasis added)); *see also id.* at 2:30–36 (Figures 1 and 2 are "in accordance with ***an embodiment*** of the subject invention" (emphasis added)).

---

[9] *Meetrix IP, LLC v. Citrix Sys., Inc.*, No. 1:16-cv-1033, 2017 WL 5986191, at *2 (W.D. Tex. Dec. 1, 2017) ("a departure from the ordinary and customary meaning is the exception, not the rule"); *Agume Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1339 (Fed. Cir. 2014) ("Neither the specification nor the prosecution history includes any lexicography or disavowal that would justify a departure from the plain meaning.").

Brazos's proposed construction of "nodal area" as "routing subdomain,"[10] by contrast, does not read in any limitations from embodiments.  Rather, Brazos's proposed construction is based on the claim language and industry standards at the time of the invention, which are referred to in the specification.  Brazos relies on a specific definition of the term "area" from an industry standard that a person of ordinary skill in the art would have been familiar with and is explicitly cited in the patent.  *See* Op. at 7–8; *see also* Ex. 5 at 3–4.  HPE does not explain why this definition is inconsistent with how a person of ordinary skill in the art would understand the term "area."  Thus, to the extent that the Court believes that it would be helpful to construe "nodal area," there is no reason to depart from the explicit definition used by industry members in a standard relevant to and cited by the '729 patent.

### 1.    "<u>inner</u> nodal area"

HPE argues that "inner nodal area" must be construed as "central" because the claims describe "an inner nodal area; and a plurality of outer nodal areas connected to the inner nodal area."  Resp. at 11.  But if this were true, no such construction of the term would be necessary as the claims themselves would already include the requirement.  All that is required to satisfy the claims is for there to be "a plurality of outer nodal areas connected to the inner nodal area," which can be satisfied regardless of whether the inner nodal area is central.

HPE also argues that its proposed construction of "inner nodal area" is supported by the specification, which it asserts "is consistent in its description of the inner ring as centrally located within the network."  Resp. at 11.  But even where a patent discloses only one embodiment of an invention, it is improper to import limitations from the embodiments into the claim.[11]  HPE cites

---

[10] HPE does not dispute the portions of Brazos's proposed constructions that the nodes of a "nodal area" "send link status [or state] messages only to each other." Resp. at 10, 13.

[11] *Phillips*, 415 F.3d at 1323.

cases in support of the proposition that one may limit claims based on descriptions in the specification that "the present invention" must include a particular feature, Resp. at 11,[12] but the '729 patent never makes any declaration that the "inner nodal area" of "the present invention" must be "central."  HPE only cites one instance of the '729 patent describing "[t]he invention," *see* Resp. at 11, but this passage merely describes that "[t]he invention [] includes . . . means for detecting topology forming information about all nodes in the inner and outer nodal areas from a central location," '729 patent at 2:16–23.  This description is consistent with the "central location" being the inner nodal area, an outer nodal area, or some other area of the network, and does not amount to a clear disavowal of scope sufficient to limit the claim.[13] The remainder of the portions of the specification cited by HPE relate only to descriptions of "preferred embodiments," descriptions of the sniffer—not the inner nodal area—as being "central," or both. These passages are therefore also not a clear disavowal of claim scope.

HPE argues that "inner nodal area" must be construed to require that such an area be "connected to an element management system" (or "EMS") because "the EMS is necessary for proper operation of the network and is connected via an inner ring node." Resp. at 13.  This demonstrates that HPE is not actually attempting to construe any portion of the term "inner nodal area" through this portion of its proposed construction, but is instead attempting to use this proposed construction to read in an additional, separate component of the network described in connection with certain embodiments of the invention.  But the '729 patent does not claim "a

---

[12] Citing *Techtronic Indus. Co. v. Int'l Trade Comm'n*, 944 F.3d 901, 907 (Fed. Cir. 2019); *Forest Labs., LLC v. SigmaPharm Labs., LLC*, 918 F.3d 928, 933 (Fed. Cir. 2019) (quoting *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007)).

[13] *See CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-513, 2020 WL 4004810, at *2 (W.D. Tex. July 15, 2020) ("To disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must represent 'a clear disavowal of claim scope.'" (quoting *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012))).

network" and its claims need not recite every component necessary to create a functional network.[14]  Rather, it claims "[a] method for managing a communications network" (claim 1) and "[a] computer readable storage medium containing a program which, when executed, perform an operation for managing a network" (claim 7), and its claims recite the elements necessary to perform the claimed management functions.  Moreover, HPE has not provided any evidence that an EMS is necessary for every embodiment of a network in which the claimed elements function.  The '729 patent describes the use of an EMS only in connection with an "embodiment" of the invention, and, absent any clear lexicography or disavowal, it is improper to import such a limitation into the claims.[15]

## 2.    "outer nodal area[s]"

HPE does not (and cannot) point to even a single portion of the specification or prosecution history of the '729 patent that describes that an "outer nodal area" "shares only one node with said inner nodal area, and does not share any nodes with any other outer ring."

HPE's entire argument is based on the flawed premise that that the "purpose" of the claimed invention is to enable the use of only a single sniffer.  Resp. at 14.[16]  But the claims do

---

[14] *See, e.g.*, *Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304, 1311 (Fed. Cir. 2001) ("A claim is not defective when it states fewer than all of the steps that may be performed in practice of an invention."); *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1180–81 (Fed. Cir. 1991) (overturning judgment of "invalid[ity] for failure to claim the subject matter regarded as the invention" because "it is entirely consistent with the claim definiteness requirement . . . to present 'subcombination' claims, drawn to only one aspect or combination of elements of an invention that has utility separate and apart from other aspects of the invention").

[15] *Thorner*, 669 F.3d at 1365 ("It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must clearly express an intent to redefine the term." (internal quotation marks omitted)).

[16] HPE's interpretation of the purported "problem that the inventors of the '729 Patent were attempting to solve" and "the putative invention of the '729 Patent" are based on its own unsupported attorney.  *See* Resp. at 13–14.

not include any requirement that only a "single" sniffer be used, and HPE has not proposed that

they be construed to include such a requirement.  Rather, the claims recite "a sniffer," which

under standard patent claim construction rules means "one or more sniffers."[17]  Regardless of the

purpose of an invention, "[a]bsent a clear disclaimer of particular subject matter, the fact that the

inventor may have anticipated that the invention would be used in a particular way does not

mean that the scope of the patent is limited to that context."[18]  It is thus improper to construe this

term to include a limitation—not stated anywhere in the claims, specification, or prosecution

history—that an outer nodal area "shares only one node with said inner nodal area, and does not

share any nodes with any other outer ring."

### D.    "configuring the sniffer as a partition designated inner nodal-area node . . ." (claims 1, 13)

HPE improperly attempts to limit the scope of this term by attempting to devise—through

unsupported attorney argument—"the central concept behind the entire invention."  Resp. at 16.

But, contrary to HPE, the "central concept behind the entire invention" is not the use of "the

Repairs of Partition Areas feature of ISO/IEC 10589:2001," which is mentioned only in

connection with the particular embodiments of Figures 1 and 2 of the patent, *see* '729 patent at

---

[17] *See KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) ("This court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.' Unless the claim is specific as to the number of elements, the article 'a' receives a singular interpretation only in rare circumstances when the patentee evinces a clear intent to so limit the article.  Under this conventional rule, the claim limitation 'a,' without more, requires at least one." (citations omitted)). Further, other claims of the '729 patent specifically require "a single sniffer," *see* '729 patent at claim 25, indicating that where the applicants desired to limit their claims to a single sniffer, they did so.

[18] *Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1355 (Fed. Cir. 2003); *see also Thorner* 669 F.3d at 1366 ("even where a particular structure makes it particularly difficult to obtain certain benefits of the claimed invention, this does not rise to the level of disavowal of the structure" (quotation marks omitted)).

2:30–36 (Figures 1 and 2 are "in accordance with ***an embodiment*** of the subjection invention" (emphasis added)), 3:66–4:14 (describing the use of the "Repair of Partition Areas as explained in ISO/IEC 10589:2001" in connection with the embodiment of Figure 1), 4:48–5:23 (describing use of "the repair of partition feature of ISO/IEC 10589:2001" in connection with the embodiment of Figure 2).  Rather, the invention, which is defined by the claims,[19] is directed to a method and operation "for managing a communications network" comprised of a number of steps that include, but are not limited to, "configuring the sniffer as a partition designated inner nodal-area node of the [first / second / remaining ] outer nodal area." *See id.* at claims 1, 13.  The patentee did not act as a lexicographer to define that this "configuring" be done through the "Repair of Partition Areas feature of ISO/IEC 10589:2001" and did not clearly disavow any other ways of "configuring the sniffer." It is, therefore, improper to limit the scope of the claims based on an embodiment described in the specification.  This is true even where the patent does not describe other methods of practicing the element.[20]

HPE is wrong that the '729 patent describes the use of the Repairs of Partition Areas feature of ISO/IEC 10589:2001 "as the key to the invention."  Resp. at 16, 19.  Indeed, the '729 patent never even uses the word "key," and HPE relies not just on the patent's descriptions of the use of the Repair of Partition Areas feature of ISO/IEC 10589:2001, but also on its more general discussion of configuring a sniffer.  *See* Resp. at 17 (quoting '729 patent at 4:31–36, which refers not to the specific example of the Repair of Partition Areas feature of ISO/IEC 10589:2001, but more broadly to the conclusion that "by reconfiguring one sniffer to act as a designated inner ring node for every outer ring area, the required information for determining topology can be

---

[19] *Thorner*, 669 F.3d at 1367 ("It is the claims that define the metes and bounds of the patentees' invention.").

[20] *Philips*, 415 F.3d at 1323.

obtained . . . [and] physical installation of sniffers in every outer ring area 104 may be avoided"). Moreover, although the '729 patent describes that the configuration of a sniffer in accordance with its teachings "is possible by virtue of the protocols used to manage the network," '729 patent at 3:63–65, it specifically identifies ISO-IEC 10589:2001 as just "*[a]n example* of an IS-IS communication system and protocols for managing [the] same," *id.* at 2:56–59 (emphasis added), and describes "that the invention is also applicable to other types of data communications networks," *id.* at 2:55–56.  HPE's position is, therefore, inconsistent with these teachings of the '729 patent.

## II.    U.S. PATENT NO. 8,462,774 (CASE NO. 6:20-CV-00730-ADA)

### A.    "assigning the MC-LAG to a multi-chassis link aggregate group virtual local area network (MC-LAG VLAN)" (claim 12)

HPE admits that its proposed construction of this term is based on reading "two examples" from the specification into the claim.  Resp. at 23 (citing '774 patent at 18:58–65, which is a description of "[a]n example configuration of the MC-LAG VLAN on the MC-LAG logical ports [as] shown in FIG. 11," *id.* at 18:56–58, and 19:37–49, which relates to "[a]n example configuration of the MC-LAG on the virtual fabric link (VFL) [as] shown in FIG. 12"[21]).  HPE fails to show this would be proper.  It is not; it is improper to import limitations from examples in the specification into claims.[22]

---

[21] The second example cited by HPE does not even relate to assigning an MC-LAG to an MC-LAG VLAN.  The patent describes that "MC-LAG VLANs can only be configured on the multi-chassis aggregate logical ports or on the virtual fabric link (VFL) 124 logical link."  '774 patent at 18:54–56.  The patent thus distinguishes between configuring an MC-LAG VLAN on MC-LAG logical ports, which "is shown in FIG. 11," *id.* at 18:54–58, and configuring an MC-LAG VLAN on a VFL, which "is shown in FIG. 12," *id.* at 19:37–38.

[22] *Thorner*, 669 F.3d at 1366 ("It is . . . not enough that the only embodiments, or all of the embodiments, contain a particular limitation.  We do not read limitations from the specification into claims . . . .").

### III.   U.S. Patent No. 9,398,629 (Case No. 6:20-cv-00783-ADA)

#### A.   "seed WLAN controller" (claims 1, 8)

HPE argues that the claimed "seed WLAN controllers" must "store information for *all* WLAN controllers registered in the mobility domain" because the specification describes seed WLAN controllers that store information for "*the* other WLAN controllers" in the mobility domain. *See* Resp. at 25. But, just as HPE argues that the specification "does not refer to *some of* the WLAN controllers," it also does not refer to "*all of* the WLAN controllers" or "*each of* the WLAN controllers." The patent's reference to "the other WLAN controllers" is insufficient to serve as a "clear and unmistakable" disclaimer of claim scope.[23] Moreover, even if the phrase "*the* WLAN controllers" in these portions of the specification did refer to "*all of the* WLAN controllers," HPE admits that these descriptions are provided "with reference to Figure 1," Resp. at 25, which is merely "an embodiment of a wireless distributed network," '629 patent at 3:42–43, 4:35–36. It is axiomatic that it is improper to import a limitation from a preferred embodiment into the claims.[24]

#### B.   "a processing module . . ." (claim 1)

HPE has not provided any evidence to rebut the presumption that this term is not governed by 35 U.S.C. § 112(f) because it does not recite the word "means."[25] Instead, HPE

---

[23] *Thorner*, 669 F.3d at 1366–67.

[24] *Phillips*, 415 F.3d at 1323.

[25] HPE incorrectly asserts that this "presumption is weak." Resp. at 27. The case relied on by HPE for this proposition—*Williamson v. Citrix Online, LLC*—includes no such holding, but instead finds that "[w]hen a claim term lacks the word 'means,' the presumption can be overcome . . . if the challenger demonstrates that the claim terms fail to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." 792 F.3d 1339, 1349 (Fed. Cir. 2015) (en banc) (quotation marks omitted). Moreover, contrary to HPE, Brazos never asserted that this presumption is strong in the abstract. *See* Resp. at 27. Rather, Brazos asserted that it was bolstered by the applicants' specific decision not to invoke § 112(f), as stated in the prosecution history. *See* Op. at 18.

merely assumes, without explanation, that the detailed algorithm included in this term is the function of the claim, not the structure. *See* Resp. at 28. But it is HPE's burden to prove that this is true, and it has failed to do so.

The one case HPE cites to support its position—*M2M Sols., LLC v. Sierra Wireless Am., Inc.*[26]—actually supports Brazos's position. In that case, the court explained its process for determining whether a claim limitation directed to a computer-implemented invention recites sufficient structure such that it is not means-plus-function. The court stated that "[s]tructure, with regard to [such] inventions, most often takes the form of an algorithm for performing the claimed function" that "must provide some explanation of how the [claim term] performs the claimed function."[27] Based on this, the court found that four terms (in claims 24–27) that recited a "processing module" were not, in fact, means-plus-function because they recite a "sufficient 'three-step' algorithmic structure."[28]

Here, as with claims 24–27 of the patent in *M2M Sols.*, the "processing module" term recites a detailed algorithm that provides sufficiently definite structure such that the presumption cannot be rebutted that this term is not means-plus-function. The algorithm recited in this term

---

[26] No. 1:14-cv-1102, 2019 WL 6328119 (D. Del. Nov. 26, 2019).

[27] *Id.* at *4–5 (alteration in original) (quotation marks and citations omitted).

[28] The algorithmic structure recited in the claims that the court found sufficiently definite was "that the processing module authenticates 'one or more wireless transmissions . . . by determining if at least one transmission contains a coded number." *Id.* (quoting U.S. Patent No. 8,648,717 at 14:60–64, 16:6–10); *see also id.* ("[C]laims 24–27 recite sufficient algorithmic structure and do not depend on the specification for that algorithmic structure."). By contrast, the court found that two terms (in claims 28 and 30) were means-plus-function because they merely "recite[d] the functions of determining a 'change in status' and determine whether something 'otherwise indicates an alarm condition' but do not other recite any structure for carrying out those functions" because they "do not provide algorithmic structure as they do not describe how the processing modules carries out the 'change in status' or 'alarm condition' determinations." *Id.*

provides three specific steps—(1) "determine an address of at least one seed WLAN controller in

the mobility domain"; (2) "register with the at least one seed WLAN controller in the mobility

domain"; and (3) "receive information for other WLAN controllers in the mobility domain from

the at least one seed WLAN"—the second of which recites two detailed sub-steps—

(a) "transmitting a register request including a layer 3 address of the WLAN to the at least one

seed WLAN controller with a mobility domain identifier of the mobility domain"; and

(b) receiving a register acknowledgement from the at least one seed WLAN controller when the

mobility domain identifier matches a mobility domain identifier of the at least one seed WLAN

controller."  Thus, unlike claims 28 and 30 of the patent in *M2M Sols.*, which simply recited the

function that the processing module determines a "change in status" or "alarm condition,"[29] the

claims here "provide algorithmic structure" describing how the claimed processing module must

operate.  Rather, similar to claims 24–27 in *M2M Sols.*, the "processing module" limitation here

is not means-plus-function.[30]

## C. "receiv[e / ing] information for other WLAN controllers in the mobility domain" (claims 1, 8)

HPE admits that its proposed construction for these terms reads in a limitation from an

embodiment into the claims.  Resp. at 29–30.  HPE's argument that this is proper because "[t]he

specification discloses no other embodiments describing what this information could be," *id.* at

30, is misguided.  If it were true that a patent claim may not read on any embodiments of the

invention beyond those specifically disclosed in the specification, it would be proper to limit the

---

[29] 2019 WL 6328119, at *5.

[30] HPE ignores the numerous decisions cited in Brazos's Opening Brief that reached similar conclusions with respect to other terms relating to processors.  *See* Op. at 19 n.20.

scope of any claims in a patent that discloses only a single embodiment to the details of that embodiment.  That, however, would be to commit error.[31]

Moreover, HPE is wrong that the claimed invention "could not be practiced without knowledge of at least the IP address of other WLAN controllers in the domain."  Resp. at 30. HPE cites no evidence in support of this assertion.  The patent teaches that WLAN controllers may be "configured with a mobility list including each other's layer 2 (such as Ethernet MAC addresses) and Layer 3 addresses (such as IP addresses)."  '629 patent at 3:66–4:3.  The WLAN controllers, therefore, may be configured to use layer 2 addresses such as MAC addresses.  Thus, HPE's constructions are improper and should be rejected.

---

[31] *Phillips*, 415 F.3d at 1323.  HPE also asserts that if the claim includes "an embodiment not described by the specification" it would be "invalid for lack of written description."  Resp. at 30. This proposition is entirely unsupported and is contrary to established law.  *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344–45, 1348 (Fed. Cir. 2001) ("Our case law is clear that an applicant is not required to describe in the specification every conceivable and possible future embodiment of his invention.  If structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims." (citations, quotation marks, and indications of alterations omitted); construing "portion" to include parts that are "integral" where patent described "the preferred embodiment . . . , in all of its representations (drawings and text), [as being] a two-piece structure" because "[t]he fact that the patentee did not explicitly disclose a one-piece embodiment in the specification . . . is not enough to import a 'separate' limitation from the specification into the claims").

Respectfully submitted,

Dated: April 8, 2021

*/s/ Raymond W. Mort, III*
Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com
THE MORT LAW FIRM, PLLC
100 Congress Avenue, Suite 2000
Austin, Texas 78701
tel/fax:   (512) 677-6825

Alessandra C. Messing
New York State Bar No. 5040019
amessing@brownrudnick.com
Timothy J. Rousseau
New York State Bar No. 4698742
trousseau@brownrudnick.com
Yarelyn Mena
(*pro hac vice*)
ymena@brownrudnick.com
BROWN RUDNICK LLP
7 Times Square
New York, New York 10036
telephone:   (212) 209-4800
facsimile:   (212) 209-4801

Edward J. Naughton
Massachusetts State Bar No. 600059
enaughton@brownrudnick.com
Rebecca MacDowell Lecaroz
(*pro hac vice*)
rlecaroz@brownrudnick.com
BROWN RUDNICK LLP
One Financial Center
Boston, Massachusetts 02111
telephone:   (617) 856-8200
facsimile:   (617) 856-8201

David M. Stein
Texas State Bar No. 797494
dstein@brownrudnick.com
Sarah G. Hartman
California State Bar No. 281751
shartman@brownrudnick.com
BROWN RUDNICK LLP
2211 Michelson Drive, 7th Floor
Irvine, California 92612

16

telephone:   (949) 752-7100
facsimile:   (949) 252-1514

*Counsel for Plaintiff*
*WSOU Investments, LLC d/b/a*
*Brazos Licensing and Development*